**PORTER, Price Administrator, v. SKLUT et al.**

**Civil Actions Nos. 526 and 684.**

District Court, D. Delaware.

Nov. 19, 1947.

Harold Cohen, and Hugo A. Ricciuti, both of Baltimore, Md., and J. Grahame Walker, of Washington, D. C., for the Office of Price Administration.

H. Albert Young, of Wilmington, Del., for defendants.

LEAHY, District Judge.

1. Plaintiff is right in his contentions. With respect to the first two shipments, plaintiff proved his case. The inspection by the government witness was confirmed by the inspector for the purchaser. Moreover, defendants, in effect, conceded that the inspection was a fair one because they made the refund without question. As to the Allied Kid shipment, the government's case is not quite so clear, but I think they have shown that their position is more probable than that of defendants. While it is true that one of the defendants' witnesses testified unqualifiedly that all the skins were of grade No. 1, yet their other witness, who was present at the government inspection, would only go so far as to say that he did not "quite agree" with the government inspector. This would seem to corroborate the government's position because there was no necessity to disagree entirely with the government inspector because more than one skin was found to be upgraded; in fact, the percentage was very high. I accordingly think the government has proved that upgrading existed and I now turn to the method to be used in computing the overcharges.

2. Defendants argue, even if there were some No. 2 grade skins in the lot, nevertheless, the mixed lot provision does not apply because of the three conditions specified in the provision, viz.: "unless (1) the quantity of each type and grade is determined by actual inspection and each type and grade is (2) individually marked or physically separated so as to be easily identifiable and (3) separately priced on the invoice or similar document." This argument has defects because the conditions of Revised Price Schedule 9 have not been met. The conditions could only be satisfied where each skin is correctly graded and marked. I have found that this was not the case. The general rule under the Schedule is that if a lot contains skins of more than one grade, all skins must be priced at not more than the maximum

price for the lowest grade. The reason for this rule is obviously to facilitate inspection and enforcement of the Maximum Price Regulations, for individual grading and inspection would be wholly impractical. Now, the Schedule envisions that its terms may work a hardship in an individual case; that is the reason that a different rule may apply provided certain conditions are met. To receive the benefit of the special consideration, a seller must strictly comply with the conditions. One of the conditions is that each skin must be individually marked and, obviously, this means correctly marked. Defendants argue that this compels defendants to proceed at their peril and is too harsh. This does not follow because where even a single skin is shown to be upgraded a defendant is no worse off because under the mixed lot provisions the entire lot would be downgraded in such a circumstance. In short, where a seller has individually marked the hides and has incorrectly marked some of them no more severe consequences follow than would be the case under a concededly mixed lot shipment.

If defendants were right, all a seller would need to do would be to invoice individually and mark the skins and perhaps secure great advantage. He would not be bound by the mixed lot provision compelling a downgrading of the whole lot to the lowest grade. And, if some of his skins were erroneously graded, he would be penalized only as to those. Consequently he would be better off than a seller operating under the general provisions of the section. I am sure that the Schedule was not intended to confer such a windfall on anyone. It was merely intended to alleviate hardship where certain conditions were met.

■ I do not however think that the government is entitled to more than single damages. While it is true that the sample inspection showed a very large percentage of upgrading and while I accept sample inspection as showing upgrading, I nevertheless think that such inspection is not satisfactory to show a wilful design on the part of defendants to violate the specified Schedule.

Judgment may be had, therefore, for the actual amount of overcharge.